******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MICHAEL KENDALL *v.* COMMISSIONER
OF CORRECTION
(AC 36698)

Sheldon, Keller and Sullivan, Js.

*Argued September 11—officially released December 22, 2015*

(Appeal from Superior Court, judicial district of
Tolland, Sferrazza, J.)

*Stephanie L. Evans*, assigned counsel, for the appellant (petitioner).

*Bruce R. Lockwood*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, *Susann E. Gill*, supervisory assistant state's attorney, and *Erika L. Brookman*, assistant state's attorney, for the appellee (respondent).

*Opinion*

SULLIVAN, J. The petitioner, Michael Kendall, appeals from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the court erred when it denied his request to withdraw his petition without prejudice. We agree with the petitioner and, accordingly, reverse the judgment of the habeas court.

The record reveals the following relevant facts and procedural history. Following a jury trial, the petitioner was found guilty of two counts of capital felony, three counts of murder, and one count of arson in the first degree. He was sentenced to life imprisonment without the possibility of release and a consecutive twenty-five year term on the arson charge. This court affirmed the petitioner's conviction on direct appeal. See *State* v. *Kendall*, 123 Conn. App. 625, 2 A.3d 990, cert. denied, 299 Conn. 902, 10 A.3d 521 (2010).

On December 13, 2010, the petitioner filed an application for a writ of habeas corpus. On September 22, 2011, the petitioner moved for appointment of counsel, which was granted on October 11, 2011. Subsequent to the appointment of counsel, the petitioner amended his petition on several occasions, with the most recent petition filed on November 29, 2013. The grounds asserted in the operative petition are ineffective assistance of trial counsel, a violation of the petitioner's constitutional right to confrontation, and the trial court's failure to instruct the jury on the petitioner's mental capacity. The respondent, the Commissioner of Correction (commissioner), filed a return to this amended petition on December 9, 2013, to which the petitioner replied on December 10, 2013. No motion to dismiss pursuant to Practice Book § 23-29 or motion for summary judgment pursuant to Practice Book § 23-37 was filed prior to the commencement of the habeas trial.

This case originally was scheduled for trial on January 23, 2013. On October 2, 2012, the petitioner moved for a continuance, which was granted on October 11, 2012. Subsequently, the case was rescheduled for December 10 and 11, 2013. Each scheduling order contained language warning that any withdrawals should be filed no later than one week before the trial date and that any party attempting to withdraw after that date would be required to show cause why his case should not be "dismissed with prejudice."

On December 10, 2013, the day that the habeas court, *Sferrazza, J.*, was scheduled to hear this matter, but prior to Judge Sferrazza's taking the bench, the habeas counsel for the petitioner, Peter Tsimbidaros, informed the court in chambers that the petitioner wished to address the court directly. After Judge Sferrazza took the bench, habeas counsel explained that the particular matter concerned "a typewritten pro se motion" that

the petitioner purportedly had mailed to the court.[1] Addressing the court, the petitioner argued that he believed a conflict of interest existed between habeas counsel and himself; therefore, he requested that the court appoint different counsel for him and grant him a continuance. After allowing habeas counsel to respond to the petitioner's accusations, which counsel denied, the trial court denied the oral motion.

Immediately following the denial of his oral motion, habeas counsel informed the court that the petitioner did not want to proceed. When the court inquired if the petitioner wanted to withdraw his petition, the petitioner responded: "I prefer to go on the record and continue with the petition on the conflict, but you said there's no conflict of interest." The court restated that there was no conflict of interest. It also stated, both on its own and in a subsequent response to the petitioner's direct question, that it would allow a withdrawal of the petition, but only with prejudice, and explained the consequences of such a withdrawal. The petitioner's habeas counsel then proceeded to call the petitioner as his first witness, and the petitioner indicated prior to being placed under oath that he did not "want to go forward with this at all."

After being placed under oath, the petitioner was asked two questions concerning the identity of the attorneys who had represented him during his criminal trial, which he answered. The petitioner then restated that he was uncomfortable proceeding with his petition. The court responded: "Well, your only options are to go forward with the trial today, or withdraw it with prejudice . . . ." At this point, habeas counsel objected to a withdrawal being entered with prejudice. The court inquired further whether the petitioner wished to proceed with this matter, reiterated a final time that any withdrawal would be with prejudice, and informed him of the consequences of not testifying at the hearing. Habeas counsel again interjected, seeking to state more clearly the basis for his objection. Noting that the record had been made, the court articulated its position as to why it would only grant a withdrawal with prejudice and stated, "that's the ruling of the court." After inquiring one last time whether the petitioner intended to testify, to which the petitioner responded that he did not, the court excused the petitioner from the witness stand.

Following the court's excusal of the petitioner from the witness stand, habeas counsel moved to admit a number of exhibits, all of which were admitted, and called to the witness stand one of the attorneys who represented the petitioner. No additional witnesses were called by either side.

On March 11, 2014, the trial court issued its memorandum of decision denying the amended petition. In relevant part, the court addressed in greater depth its ruling

on the petitioner's request to withdraw his petition. After briefly recounting the facts concerning the hearing, including that the attorneys for both parties were ready to proceed and that there already had been a delay of eleven months, the court held that it did not permit the withdrawal without prejudice because "the petitioner's habeas hearing [had] commenced for purposes of [General Statutes] § 52-80 when the court took the bench to hear evidence on the date and time assigned." Certification was granted for this appeal on March 19, 2014, and this appeal followed.

We begin by setting out the standards of review governing this appeal. The decision by a habeas court to condition a withdrawal of a habeas petition on that withdrawal being "with prejudice" is, when authorized, a decision left to that court's discretion. See *Mozell* v. *Commissioner of Correction*, 147 Conn. App. 748, 759–60, 83 A.3d 1174, cert. denied, 311 Conn. 928, 86 A.3d 1057 (2014). The determination of when § 52-80 requires the permission of the court before a petitioner may withdraw his petition, however, involves a question of statutory construction. "[I]ssues of statutory construction raise questions of law, over which we exercise plenary review." (Internal quotation marks omitted.) *Cruz* v. *Montanez*, 294 Conn. 357, 367, 984 A.2d 705 (2009); see also *Crawford* v. *Commissioner of Correction*, 294 Conn. 165, 174, 982 A.2d 620 (2009) (determinations of law in habeas proceedings receive plenary review).

Section 52-80 provides in relevant part: "The plaintiff may withdraw any action . . . before the commencement of a hearing on the merits thereof. After the commencement of a hearing on an issue of fact in any such action, the plaintiff may withdraw such action . . . only by leave of court for cause shown." "If the requisite hearing has not commenced, then the plaintiff's right to withdraw is absolute and unconditional. . . . If, however, a hearing on an issue of fact has commenced, then, the action can not be withdrawn without the court's permission." (Citation omitted; internal quotation marks omitted.) *Melendez* v. *Commissioner of Correction*, 141 Conn. App. 836, 843, 62 A.3d 629, cert. denied, 310 Conn. 921, 77 A.3d 143 (2013). Similarly, although "[a] plaintiff is generally empowered, though not without limitation, to withdraw a complaint before commencement of a hearing on the merits . . . [a] plaintiff is not entitled to withdraw a complaint without consequence at such hearing." (Citation omitted.) *Mozell* v. *Commissioner of Correction*, supra, 147 Conn. App. 757.

Neither party disputes that § 52-80 applies to habeas actions or that, under the appropriate circumstances, a habeas court can order that a withdrawal of a habeas petition be with prejudice; rather, the primary point of contention concerns whether the habeas court properly

determined that the petitioner could not withdraw his petition without prejudice because a hearing on the merits had commenced. The petitioner contends that he had a right to withdraw his petition because a hearing on the merits had not commenced for purposes of § 52-80 and that the court's ruling, therefore, was improper.

In response, the commissioner urges us to uphold the habeas court's determination that the habeas trial had commenced when the judge took the bench to hear evidence on the date and time assigned. Arguing that the statute itself contains internal ambiguities—relying, in particular, on the language that the withdrawal is unfettered before "the commencement of a hearing on the merits" begins, but limited to cause "[a]fter the commencement of a hearing on an issue of fact," and the lack of guidance as to whether a hearing may commence prior to the introduction of evidence—the commissioner asserts that the statute is not plain and unambiguous and that recourse to extratextual sources, therefore, is appropriate. Turning to the history of § 52-80, the equitable principles that inform it, and the unique concerns governing habeas proceedings, the commissioner urges that "a common sense understanding of when a habeas hearing has commenced, rather than a technical one," is required in applying § 52-80 to habeas actions. We agree with the petitioner that a hearing on the merits had not commenced and that the court, therefore, improperly denied his request to withdraw his petition without prejudice solely on the ground that a hearing on the merits had commenced.

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Kasica* v. *Columbia*, 309 Conn. 85, 93, 70 A.3d 1 (2013).

"Notwithstanding the passage of § 1-2z, in our construction of statutes, this court's starting point, when we already have interpreted the statute in question, is

our prior construction of that statute. . . . This approach is consistent both with the principle of stare decisis and the principle that our prior decisions interpreting a statute are not treated as extratextual sources for purposes of construing that statute and may be consulted as part of our reading of the statutory text." (Citations omitted.) *Gilmore* v. *Pawn King, Inc.*, 313 Conn. 535, 565, 98 A.3d 808 (2014) (*Espinosa, J.*, dissenting); see also *State* v. *Moreno-Hernandez*, 317 Conn. 292, 299–300, 118 A.3d 26 (2015) (beginning court's analysis with text of statute and past cases interpreting that language). Thus, the courts ordinarily turn to the analysis prescribed by § 1-2z to answer questions of statutory construction when our past case law analyzing a statute is insufficient to answer the question raised. See *State* v. *Moreno-Hernandez*, supra, 302 (analysis pursuant to § 1-2z warranted when past decisions conflicted on issue and neither contradictory case "provide[d] [the court] with a sufficient analytical framework to resolve the present case but, rather, offer[ed] only conclusions without explanations"); *Kasica* v. *Columbia*, supra, 309 Conn. 94 n.10 ("[t]hus, although we draw on case law interpreting [General Statutes] § 12-55 that predates the enactment of § 1-2z, we still apply § 1-2z to the extent that those cases do not fully resolve the issues presented in this appeal").

This court on two prior occasions has considered claims involving the intersection of § 52-80 with habeas actions, albeit under circumstances where the precise moment that the requisite hearing had begun was not the primary focus of the court.[2] In *Melendez* v. *Commissioner of Correction*, supra, 141 Conn. App. 837, the trial on Oscar Melendez' habeas petition was scheduled to begin on April 27, 2011. On that date, the court inquired if there were any preliminary matters before the start of evidence. Id. Melendez informed the court that he wished to " 'withdraw,' " which, during the canvass that immediately followed, the court interpreted as a request to discharge counsel. Id., 838. The court denied the request and asked Melendez' counsel if he wanted to call witnesses, at which point Melendez interrupted and stated that he was "not going through with this." (Internal quotation marks omitted.) Id. Melendez' counsel suggested that Melendez wished to withdraw his petition, and the court addressed Melendez again. Id., 838–39. After canvassing Melendez a second time, who was less than clear as to whether he wished to withdraw his petition, the court concluded that the withdrawal was not voluntary and did not accept it. Id., 839–40. The court then ordered the trial to proceed that day, but Melendez refused to testify; as no other evidence was presented by either party, the court denied the habeas petition. Id., 840.

On appeal, Melendez, having failed to raise his claim concerning § 52-80 in the habeas court or in his petition for certification to appeal, argued that the court's

refusal to grant his oral request to withdraw was plain error.[3] Id. This court disagreed, stating that, with respect to the first prong, "there is a lack of clarity as to whether a 'hearing on the merits' had commenced at the time the request to withdraw the habeas petition was finally denied. The case was scheduled to begin to be heard on its merits, and, as argued by the respondent, the court did not finally deny the request until after it had called for the testimony of the first witness." Id., 843. The court further observed that any error that might have occurred was not "plain error because it is not clear and obvious from the record what the petitioner was requesting," and that the second prong was not met under the circumstances of that case. Id., 843–44.

The following year, this court decided *Mozell* v. *Commissioner of Correction*, supra, 147 Conn. App. 751, a case that similarly required the court to consider a motion to withdraw a habeas action on the day that the habeas trial was scheduled to begin. In that case, the court granted the respondent's motion to dismiss three of the four counts in the habeas petition. Id. Following a request to amend the petition, which the court denied, Troy Mozell addressed the court and indicated that he wished to withdraw the remaining count of his habeas petition. Id. Following a recess to allow Mozell to discuss the matter with his counsel, the court noted that any withdrawal would be allowed only with prejudice and explained the potential consequences of such a withdrawal. Id., 751–52. Mozell affirmed that he wanted to withdraw, and the court granted his withdrawal. Id., 752.

On appeal, Mozell argued that the habeas court erred in conditioning his withdrawal on its being with prejudice.[4] Id., 756. This court reaffirmed that a habeas court is authorized to grant a withdrawal with prejudice and that imposing that condition in that case did not violate Mozell's constitutional rights because a valid waiver existed. See id., 757–59. This court held that the habeas court had acted within its discretion in adding "with prejudice" to the withdrawal, noting, inter alia: "Witnesses had been subpoenaed and were in court ready to proceed; expense such as setting up videoconferencing for a witness in Nevada had been incurred; evidence had begun, according to the respondent's counsel, in that some exhibits had already been admitted in full; this was the petitioner's third habeas action; and that [t]his is not exactly a new thing for [the petitioner] to get to trial and be unhappy and attempt to withdraw." (Footnote omitted; internal quotation marks omitted.) Id., 760. In a footnote following its consideration that evidence had begun in the habeas action at the time the request to withdraw was granted, the court observed that Mozell had not invoked § 52-80 in support of his argument that he should have been allowed to withdraw his petition. Id., 760 n.13. As the court stated, however, "[h]e was . . . permitted to withdraw his

petition and although § 52-80 does not say what happens when a withdrawal is accomplished *after commencement of trial,* its implication is clear." (Emphasis added.) Id.

In addition to the cases addressing § 52-80 in the context of habeas petitions, Connecticut courts also have applied this statute to other types of civil actions. In the context of stock valuation proceedings held pursuant to General Statutes § 33-384,[5] our Supreme Court noted that "the only 'hearing on an issue of fact' which is held when an appraiser's report is sought consists of the proceedings, if any, before the appraiser." *Spears* v. *Kerars Realty Co.,* 171 Conn. 699, 703, 372 A.2d 121 (1976). Although the informality of such proceedings might make it "difficult in some cases to determine at what point the appraiser commences his fact-finding function . . . this fact-finding function cannot commence prior to the appraiser's formal appointment by the court." Id.[6] In the context of marital dissolution actions, this court in *Grimm* v. *Grimm,* 74 Conn. App. 406, 410, 812 A.2d 152 (2002), cert. denied, 263 Conn. 911, 821 A.2d 766 (2003), held that testimony limited to one question on the day that trial was scheduled to begin was sufficient to commence a hearing on the merits and that "[t]he reason for the commencement of the hearing is not relevant to the application of § 52-80." In a footnote in that same opinion, this court further opined that, "[c]onsistent with the purpose of § 52-80 to prevent a party from unilaterally withdrawing an action once it has engaged the court, we believe that a better understanding of § 52-80 in the marital dissolution context is that its provisions apply anytime after the court has conducted a hearing on any contested issue, including a pendente lite hearing." Id., 410 n.3.[7]

Our precedent reflects that, when determining whether a hearing on an issue of fact had commenced, Connecticut courts have considered the nature of the action and the particular type of hearing involved. See *Spears* v. *Kerars Realty Co.,* supra, 171 Conn. 701–704; *Grimm* v. *Grimm,* supra, 74 Conn. App. 410 n.3. The courts have conducted less individualized examinations, however, with respect to hearings on the merits, particularly where the hearing in question is a trial before the court. In those instances, it was deemed sufficient that the case had been scheduled to proceed on the merits *and* the court had taken some step in receiving evidence on those merits. See *Grimm* v. *Grimm,* supra, 410 (testimony of plaintiff, no matter how brief, on day assigned for trial sufficient); cf. *Mozell* v. *Commissioner of Correction,* supra, 147 Conn. App. 760 (habeas proceeding was scheduled on date in question and "evidence had begun . . . in that some exhibits had already been admitted in full");[8] *Melendez* v. *Commissioner of Correction,* supra, 141 Conn. App. 843 (noting "lack of clarity" concerning whether hearing on merits had commenced because case was scheduled

for hearing on merits and no final denial by court of withdrawal request until after court called for testimony of first witness).

Our precedent is, in this respect, consistent with the plain and unambiguous language of the statute. Under § 1-2z, we are required to follow the language of the statute unless it is not "plain and unambiguous" or it "yield[s] absurd or unworkable results." "A statute is ambiguous if, when read in context, it is susceptible to more than one reasonable interpretation. . . . Additionally, statutory silence does not necessarily equate to ambiguity." (Internal quotation marks omitted.) *Hartford/Windsor Healthcare Properties, LLC* v. *Hartford*, 298 Conn. 191, 197–98, 3 A.3d 56 (2010). "[W]e are [also] guided by the principle that the legislature is always presumed to have created a harmonious and consistent body of law . . . . [T]his tenet of statutory construction . . . requires us to read statutes together when they relate to the same subject matter. . . . Accordingly, [i]n determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction. . . . As a result, it is well settled that when two incongruent readings of a statute are equally plausible, the statute is ambiguous." (Citations omitted; internal quotation marks omitted.) Id., 198. "[S]ilence may render a statute ambiguous when the missing subject reasonably is necessary to effectuate the provision as written. . . . Similarly, the legislature's silence as to the scope of a term may render the statute ambiguous." (Citation omitted.) *State* v. *Ramos*, 306 Conn. 125, 136–37, 49 A.3d 197 (2012).

We return to the language of § 52-80. That section permits, in relevant part, a plaintiff to withdraw an action "before the commencement of a hearing on the merits thereof," but requires a demonstration of cause and permission of the court "[a]fter the commencement of a hearing on an issue of fact . . . ." General Statutes § 52-80. "If a statute . . . does not sufficiently define a term, it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Internal quotation marks omitted.) *State* v. *Love*, 246 Conn. 402, 408, 717 A.2d 670 (1998). In particular, when attempting to discern the intent of the legislature in drafting older statutes, "dictionaries in print at that time are especially instructive." *State* v. *Menditto*, 315 Conn. 861, 866, 110 A.3d 410 (2015). Where words or phrases with a specific legal definition are used, however, the legislature is presumed to have used those words according to that definition. *Patino* v. *Birken Mfg. Co.*, 304 Conn. 679, 689, 41 A.3d 1013 (2012).

The term "hearing," by itself, is capable of considerable broadness; therefore, our courts generally have recognized that the term, standing alone, is inconclusive as to what is required of the court. See, e.g., *State*

v. *Fernando A.*, 294 Conn. 1, 17, 981 A.2d 427 (2009) (recognizing that term could include "listening to arguments," "opportunity to be heard," or "judicial session . . . held for the purpose of deciding issues of fact or of law, sometimes with witnesses testifying" [emphasis omitted; internal quotation marks omitted]); *Willimantic Car Wash, Inc.* v. *Zoning Board of Appeals*, 247 Conn. 732, 737–38, 724 A.2d 1108 (1999) (although recognizing that dictionary definitions recognize formality of proceeding and purpose for considering evidence to determine issues of fact and law, noting that "term hearing . . . is a verbal coat of many colors" [internal quotation marks omitted]); *Tevolini* v. *Tevolini*, 66 Conn. App. 16, 24, 783 A.2d 1157 (2001) ("[a] hearing can be a proceeding in the nature of a trial with the presentation of evidence, it can be merely for the purpose of presenting arguments, or, of course, it can be a combination of the two" [internal quotation marks omitted]).[9] Black's Law Dictionary, however, presently defines the term "hearing on the merits" much more specifically as "[a] formal proceeding before a judge who hears testimony under the rules of evidence and makes a final decision in the case." Black's Law Dictionary (10th Ed. 2014). That same dictionary defines "merits" separately as "[t]he elements or grounds of a claim or defense; the substantive considerations to be taken into account in deciding a case, as opposed to extraneous or technical points, esp. of procedure <trial on the merits>," and "an issue of fact" as "[a] point supported by one party's evidence and controverted by another's." Black's Law Dictionary, supra.

The present language of § 52-80 was adopted by the legislature in 1925. See Public Acts 1925, No. 163; *Spears* v. *Kerars Realty Co.*, supra, 171 Conn. 703. Addressing the term "hearing" first, the definitions contained within a number of legal dictionaries from that period concerned the relation of the term to equitable proceedings. See Black's Law Dictionary (3d Ed. 1933) (in equity practice, "hearing" is "[t]he hearing of the arguments of the counsel for the parties upon the pleadings, or pleadings and proofs; corresponding to the trial of an action at law"); Ballentine's Law Dictionary (1930) (noting term is "[a]n equity term" and could apply to either final or interlocutory proceedings). The Cyclopedic Law Dictionary, although recognizing that the term has a specific meaning in chancery suits, states: "In legal contemplation, the word hearing, when used in connection with the trial of a lawsuit, includes not only the listening to the examination of the witnesses but the entire judicial examination of the issues, both of law and of fact, between the parties. . . . Consequently the word embraces the listening to the arguments of counsel on both sides if oral arguments are made and the reading of the arguments if written or printed arguments are presented; and, also, the consideration of these arguments in respect to both points of law and of fact."

(Citation omitted.) Cyclopedic Law Dictionary (J. Cahill ed., 2d Ed. 1922).

Other dictionaries of the time period in question also define "hearing." For example, the Century Dictionary and Cyclopedia provides the following definition for "hearing": "Audience; opportunity to be heard. . . . A judicial investigation of a suit at law; attention to and consideration of the testimony and arguments in a cause between parties, with a view to a just decision: especially used of trial without a jury." 4 Century Dictionary and Cyclopedia (1911). The New Century Dictionary of the English Language defines "hearing" as "a formal or official listening or an audience given; esp., a judicial listening to testimony and arguments, as in a suit at law . . . ." 1 New Century Dictionary of the English Language (1929).

Under the statute, the requisite hearing is either one "on the merits" or "on an issue of fact . . . ." General Statutes § 52-80. The Cyclopedic Law Dictionary defines "merits" as "[t]he strict legal rights of the parties, as distinguished from matters of practice and matters resting in the discretion of the court." Cyclopedic Law Dictionary, supra. This same authority construes related terms in light of the requirement that they relate to matters of substance. See id. (defining "cause of action or defense on the merits" as "one resting on matters of substance, not on form or technicality" and "[a] judgment on the merits is one decisive of some strictly legal right of the party"). Ballentine's Law Dictionary provides a similar definition, defining the term as "[t]he strict legal rights of the parties to an action, as contradistinguished from those mere questions of practice which every court regulates for itself, and from all matters which depend upon the discretion or favor of the court." See Ballentine's Law Dictionary, supra. Other contemporaneous dictionaries recognize this specifically legal definition of the word "merits." See 1 New Century Dictionary of the English Language, supra (defining "merits" as "the right and wrong of a case, orig. at law, as distinguished from extraneous points concerning it, or excellences of any matter [as, the merits of a case; to consider a proposition on its merits]" [emphasis omitted]); Universal Dictionary of the English Language (H. Wyld ed. 1932) (defining term in legal context as "[i]ntrinsic rights and wrong of a case; strict legal rights of parties in a suit: *to decide a case on its merits*" [emphasis in original]).

Turning to "issue of fact," Ballentine's Law Dictionary defines that phrase as "[s]uch an issue as is made by the pleadings in a civil action, where the facts alleged, constituting the cause of action, are denied." Ballentine's Law Dictionary, supra. Other legal dictionaries of the time define "issue in fact" as "one in which the truth of some fact is affirmed and denied"; Cyclopedic Law Dictionary, supra; and, in pleading, "[a]n issue

taken upon or consisting of matter of fact, the fact only, and not the law, being disputed, and which is to be tried by a jury" or "an issue which arises upon a denial in the answer of a material allegation of the complaint or in the reply of a material allegation in the answer." (Emphasis omitted.) Black's Law Dictionary (3d Ed. 1933).

Pursuant to § 52-80, the right to withdraw a case or petition is cut off when a hearing on the merits or on an issue of fact has "commenced." See General Statutes § 52-80. "Commence" has been defined as "[t]o initiate by performing the first act. To institute or start." (Internal quotation marks omitted.) See *GMAC Mortgage Corp.* v. *Glenn*, 103 Conn. App. 264, 269, 931 A.2d 290 (2007), quoting Black's Law Dictionary (5th Ed. 1979). It has also been defined as "to begin; to enter upon; start; to initiate formally by performing the first act; to have a beginning." (Internal quotation marks omitted.) *New Haven* v. *Public Utilities Commission*, 165 Conn. 687, 694, 345 A.2d 563 (1974), quoting Webster's Third New International Dictionary. These definitions do not differ materially from definitions contemporaneous to the passage of § 52-80. See, e.g., Black's Law Dictionary (3d Ed. 1933) (defining "commence" as "[t]o perform the first act of . . . [or] [t]o institute" [citation omitted]); Universal Dictionary of the English Language, supra (defining "commence" as "[t]o begin, start, enter upon" and "commencement" as "[t]he act, or process, of commencing; beginning, origin . . . time at which anything begins").

Thus, with respect to a hearing on the merits, a party's right to unilaterally withdraw an action or petition ceases when the presiding authority begins or initiates formally a proceeding in which it will make a substantive determination concerning the legal or factual issues in the case. Both contemporaneous understandings of the word "hearing" and the present definition of "hearing on the merits" recognize the role of evidence, testimony, and argument in the ultimate determination that the court is called to make. Additionally, applying the word "merits," as construed through applicable dictionaries of the period, to the "hearing" in question demonstrates that the proceeding must concern the facts and law governing the strict legal rights of the parties as opposed to merely procedural or ancillary matters. Therefore, construing the term "before the commencement of a hearing on the merits" to include that period when a judge has taken the bench, but has not yet begun to address any of the substantive issues in the case, is a less plausible interpretation of that statute than one that focuses on the presentation of arguments or evidence concerning those merits.

We turn now from the language of § 52-80 to examine its relationship with other pertinent statutes. "[T]he General Assembly is always presumed to know all the

existing statutes and the effect that its action or non-action will have upon any one of them. . . . This principle is in accord with the directive of § 1-2z to consider a statute in relationship to other statutes on the same subject matter in order to determine whether its meaning is plain and unambiguous." (Internal quotation marks omitted.) *AvalonBay Communities, Inc.* v. *Zoning Commission*, 280 Conn. 405, 417, 908 A.2d 1033 (2006).

Although the term "commence" has received limited explication in the context of § 52-80, our Supreme Court, in construing a different statute applicable to certain civil actions, has offered some guidance as to the term's potential meaning. See *Krawiec* v. *Kraft*, 163 Conn. 445, 448, 311 A.2d 82 (1972). In *Krawiec*, our Supreme Court was called upon to interpret, inter alia, General Statutes (Rev. to 1971) § 52-193, which permitted an offer of judgment in actions on contract or for money damages to be filed " 'before trial.' " Id.[10] Our Supreme Court, in interpreting this language, noted: "[B]efore trial has often meant before the commencement of the trial and the commencement of a trial is frequently construed to mean before opening statements in a trial to a court . . . ." (Internal quotation marks omitted.) Id., citing, inter alia, annot., 1 A.L.R.3d 711, 712 (1965).

Section 52-80 differs from § 52-193 in that the former statute defines the relevant point in time as "before [or after] commencement of a hearing," while the latter defined it as "before trial." Compare General Statutes § 52-80 with General Statutes (Rev. to 1971) § 52-193. Therefore, we recognize that we cannot import the standards for when a trial begins for purposes of § 52-193 to when a hearing begins for the purposes of § 52-80. See *Plourde* v. *Liburdi*, 207 Conn. 412, 416, 540 A.2d 1054 (1988) ("[t]he use of different words [or the absence of repeatedly used words in the context of] the same [subject matter] must indicate a difference in legislative intention" [internal quotation marks omitted]); *Regan* v. *Regan*, 143 Conn. App. 113, 121, 68 A.3d 172 ("[t]his court cannot, by judicial construction, read into legislation provisions that clearly are not contained therein" [internal quotation marks omitted]), cert. granted on other grounds, 310 Conn. 923, 77 A.3d 140 (2013).

Nevertheless, the comparison between the statutes remains helpful for two reasons. First, the words "before" and "prior to," when used as prepositions in the context of defining a preceding event, are the functional equivalents of one another. See Webster's Third New International Dictionary (1993) (defining "before" as "preceding [a point, turn, or incident in time]" and "prior to" as "in advance of; BEFORE"). Second, our Supreme Court's analysis in *Krawiec* demonstrates that, when interpreting a statute concerning a proce-

dural right that must be exercised relative to a specific judicial proceeding or be lost, "the commencement of" that judicial proceeding references the earliest point in the proceeding that addresses the substantive aspects of that proceeding. See *Krawiec* v. *Kraft*, supra, 163 Conn. 448.

Further, "[h]abeas corpus is a civil proceeding. . . . It is a legal and not an equitable remedy. . . . The application for a writ of habeas corpus is regarded as a pleading in the nature of a complaint . . . and the return in the nature of an answer. . . . The pleadings in this case are so framed and when issue is joined the evidence must be relevant to those issues." (Citations omitted; internal quotation marks omitted.) *Daniel* v. *Commissioner of Correction*, 57 Conn. App. 651, 654 n.3, 751 A.2d 398, cert. denied, 254 Conn. 918, 759 A.2d 1024 (2000). "A habeas corpus action, as a variant of civil actions, is subject to the ordinary rules of civil procedure, unless superseded by the more specific rules pertaining to habeas actions." (Internal quotation marks omitted.) *Betancourt* v. *Commissioner of Correction*, 132 Conn. App. 806, 812, 35 A.3d 293, cert. denied, 303 Conn. 937, 36 A.3d 695 (2012).

General Statutes § 52-470 (a), the statute governing hearings on the merits of habeas petitions, provides: "The court or judge hearing any habeas corpus shall proceed in a summary way to determine the facts and issues of the case, by hearing the testimony and arguments in the case, and shall inquire fully into the cause of imprisonment and thereupon dispose of the case as law and justice require."[11] "[W]henever a court is legally required to hear a habeas petition, § 52-470 (a) delineate[s] the proper scope of [the] hearing . . . . The statute explicitly directs the habeas court to dispose of the case only after hearing the testimony and arguments therein." (Emphasis omitted; internal quotation marks omitted.) *Mercer* v. *Commissioner of Correction*, 230 Conn. 88, 93, 644 A.2d 340 (1994).

"The [habeas] proceeding is summary in the sense that it should be heard promptly, without continuances . . . but the use of the word also implies that the proceeding should be short, concise and conducted in a prompt and simple manner, without the aid of a jury, or in other respects out of the regular course of the common law." (Citation omitted; internal quotation marks omitted.) *State* v. *Phidd*, 42 Conn. App. 17, 31, 681 A.2d 310, cert. denied, 238 Conn. 907, 679 A.2d 2 (1996), cert. denied, 520 U.S. 1108, 117 S. Ct. 1115, 137 L. Ed. 2d 315 (1997); see also Practice Book § 23-34 ("[t]he judicial authority may establish such additional procedures as it determines will aid in the fair and summary disposition of habeas corpus petitions, including, but not limited to, scheduling orders"). A habeas proceeding is heard by the court or judge, not a jury. See General Statutes § 52-215. The court may allow

opening arguments, but is not required to do so; Practice Book § 15-6; and, "as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Necaise* v. *Commissioner of Correction*, 112 Conn. App. 817, 820, 964 A.2d 562, cert. denied, 292 Conn. 911, 973 A.2d 660 (2009).

On the basis of foregoing authority, neither of the commissioner's arguments that § 52-80 is ambiguous as applied to this case are convincing. With respect to his first argument, any potential ambiguity between the commencement of a hearing on the merits and a hearing on an issue of fact is inapplicable because our precedent indicates that the habeas hearing scheduled for that day would have been a hearing on the merits as contemplated within the statute. See *Mozell* v. *Commissioner of Correction*, supra, 147 Conn. App. 760 n.13; *Melendez* v. *Commissioner of Correction*, supra, 141 Conn. App. 843; cf. *Franko* v. *Bronson*, 19 Conn. App. 686, 694, 563 A.2d 1036 (1989) ("[i]n a habeas corpus case, the adjudication on the merits [for purposes of res judicata] is the judgment on the habeas petition"), overruled in part on other grounds by *Vazquez* v. *Commissioner of Correction*, 88 Conn. App. 226, 234, 869 A.2d 234 (2005). Further, the record does not indicate that any hearing occurred that might in the context of habeas proceedings qualify as a "hearing on an issue of fact," and the commissioner has not argued that there was any such hearing prior to the date of the habeas trial.

We also disagree with the commissioner's second argument that the term "commence" itself is ambiguous in this context. When legally required to hold a hearing on a habeas petition, the scope of any such judicial examination necessarily requires the consideration of the evidence and arguments produced by the parties. See *Mercer* v. *Commissioner of Correction*, supra, 230 Conn. 93. Thus, although the resolution of certain preliminary matters that might overlap with the merits of a habeas petition or a petitioner's own actions might make it challenging to determine whether a hearing on the merits has commenced in specific instances, given the summary nature of habeas proceedings; see *Mozell* v. *Commissioner of Correction*, supra, 147 Conn. App. 751, 759–60; *Melendez* v. *Commissioner of Correction*, supra, 141 Conn. App. 843–44; it is difficult to comprehend how a hearing on the merits of a habeas petition could ever commence for purposes of § 52-80 without any evidence or arguments on those merits having been presented. Consequently, the argument that a habeas court taking the bench on the day the matter was scheduled for trial is sufficient to commence a hearing on the merits is not a reasonable construction of that statute as that, in effect, would treat the court's taking the bench to hear a preliminary matter, no matter how unrelated to the actual merits of the petition, as the functional equivalent of its taking the bench to hear the substantive

arguments or the evidence presented in support of that petition. See *State* v. *Jackson*, 153 Conn. App. 639, 644, 103 A.3d 166 (2014) ("ambiguity exists only if the statutory language at issue is susceptible to more than one plausible interpretation" [internal quotation marks omitted]), cert. denied, 315 Conn. 912, 106 A.3d 305 (2015).

After examining the record, § 52-80, and the relevant case law, we conclude that no hearing on the merits can be said to have commenced within the meaning of the statute at the time the petitioner stated that he wished to withdraw his petition and the court ruled that it would allow a withdrawal only with prejudice. Habeas counsel had alerted the habeas court prior to the court's taking the bench that the petitioner wished to address the court.[12] After addressing both the petitioner and habeas counsel, the court denied the petitioner's oral motion to appoint new counsel and indicated that the case would proceed that day. Immediately following this denial and prior to the court calling for the testimony of the first witness or the petitioner's taking the witness stand, however, habeas counsel, after conferring with the petitioner, indicated that his client wished to withdraw his petition. No evidence had been taken, and neither party had presented any arguments concerning the merits of the case before the court ruled that the petitioner could not withdraw his petition without prejudice.[13]

The commissioner nevertheless argues that, if we determine that the habeas hearing only commenced, pursuant to § 52-80, with the start of evidence, the habeas court specifically decided the request to withdraw the petition after the petitioner already had begun his testimony. The commissioner relies on our statements in *Melendez* v. *Commissioner of Correction*, supra, 141 Conn. App. 843, in which we indicated that a "lack of clarity" existed concerning whether the hearing on the merits had started because the habeas court finally denied the request to withdraw the petition after it had called for the testimony of the first witness.

The circumstances in *Melendez* are distinguishable from the present case. In that case, the habeas court was confronted with a petitioner whose statements concerning his desire to "withdraw" were unclear as to whether he wished to discharge counsel or whether he wished to withdraw his petition completely. See id., 837–40. The habeas court, in trying to interpret these statements, originally treated them as a request to discharge counsel and continue the case. Id., 838. After denying the motion to discharge, "[t]he court stated [that], '[w]e shall go forward with the case,' and asked the petitioner's counsel if he wanted to call witnesses." Id. It was only after this instruction to call witnesses that the petitioner stated that he did not want to proceed and that the habeas court finally addressed the merits

of the motion to withdraw. Id., 839–40. Thus, the statement of this court in *Melendez* that the habeas court "finally den[ied]" the request must be understood in the light of the fact that, due to the confusing statements of the petitioner, the habeas court had not addressed the issue prior to the first witness' being called. See id., 843.

In the present case, the court first addressed the petitioner's request concerning his request to withdraw his petition immediately following its ruling on his oral motion to discharge his habeas counsel and for a continuance. Unlike the habeas court in *Melendez*, the colloquy between the court and the petitioner, as well as the court's statements that it would allow a withdrawal of the petition only with prejudice, demonstrates that the court was not confused as to what the petitioner was requesting.[14] Although the court had indicated that the case would proceed, no witnesses had been called when the court articulated its unequivocal position that any withdrawal would be permitted only with prejudice.

Viewing in context the later statements by the court and habeas counsel upon which the commissioner relies, we are persuaded that, despite the court's statements after the petitioner took the witness stand that "that's the ruling of the court," the court already had made its determination that a hearing on the merits had commenced, and, therefore a withdrawal of the petition would be permitted only with prejudice. Subsequent to the petitioner being called as a witness and placed under oath, habeas counsel formally objected to a withdrawal with prejudice of the petition, which the court noted. Soon thereafter, during the discussion between the court and the petitioner, habeas counsel again interjected to state more clearly the grounds for the objection, and the trial court clarified the bases for its ruling.[15] Therefore, the later statements of the court and habeas counsel must be understood to have been related to habeas counsel's objection preserving the issue for review rather than being a final ruling by the court on that point. Accordingly, we conclude that the court erred in determining that a hearing on the merits, for purposes of § 52-80, commences immediately upon the judge taking the bench on the day of trial, and that, on the basis of this erroneous construction, the court improperly denied the petitioner's request to withdraw his petition without prejudice.[16]

The judgment is reversed and the case is remanded with direction to grant the petitioner's request to withdraw his habeas petition without prejudice.

In this opinion the other judges concurred.

[1] This document, dated December 5, 2013, and purportedly mailed that same day, was not received by the court until December 17, 2013. In this document, the petitioner asserted that a conflict of interest existed between himself and his habeas counsel premised on habeas counsel's failure to locate certain witnesses possessing exculpatory information. He also asserted that habeas counsel failed to inform him of the trial date until a

visit five days before trial, when, "[a]t such visitation, [the] petitioner was informed that [habeas] counsel was unprepared for trial, that the court would refuse a continuance, [and] thus, [the] petitioner was advised to withdraw his petition." As relief, the petitioner sought new counsel or a continuance granted by the court so that counsel "may prepare an adequate defense and conduct a thorough investigation for trial."

[2] The issue was raised in a third habeas appeal, but dismissed for lack of aggrievement. See *Tyson* v. *Commissioner of Correction*, 155 Conn. App. 96, 104–105, 109 A.3d 510, cert. denied, 315 Conn. 931, 110 A.3d 432 (2015).

[3] "[T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy." (Internal quotation marks omitted.) *Melendez* v. *Commissioner of Correction*, supra, 141 Conn. App. 841. Claims are reviewed for plain error pursuant to a two-pronged framework. Id., 842. "First, we must determine whether the trial court in fact committed an error and, if it did, whether that error was indeed plain in the sense that it is patent [or] readily discernable on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable. . . . [T]his inquiry entails a relatively high standard, under which it is not enough for the defendant simply to demonstrate that his position is correct. Rather, the party seeking plain error review must demonstrate that the claimed impropriety was so clear, obvious and indisputable as to warrant the extraordinary remedy of reversal. . . . [U]nder the second prong of the analysis we must determine whether the consequences of the error are so grievous as to be fundamentally unfair or manifestly unjust. . . . Only if both prongs of the analysis are satisfied can the appealing party obtain relief." (Internal quotation marks omitted.) *State* v. *Ruocco*, 151 Conn. App. 732, 739–40, 95 A.3d 573, cert. granted on other grounds, 314 Conn. 923, 100 A.3d 854 (2014).

[4] Specifically, Mozell argued that the court erred because: (1) "a withdrawal with prejudice does not and should not exist within our jurisprudence" because such a withdrawal nullifies its voluntariness; (2) "the habeas court may grant a dismissal only for one or more of the reasons listed in Practice Book § 23-29"; and (3) "[p]rior to the court granting a dismissal, an evidentiary hearing must be held on the issue." (Footnote omitted; internal quotation marks omitted.) *Mozell* v. *Commissioner of Correction*, supra, 147 Conn. App. 756–57.

[5] General Statutes § 33-384 was repealed, effective January 1, 1997. See Public Acts 1994, No. 94-186, § 214.

[6] In subsequent cases, both our Supreme Court and this court have provided further guidance on when precisely "a hearing on an issue of fact" has commenced in this context. See *Barra* v. *Ridgefield Card & Gift Gallery, Ltd.*, 194 Conn. 400, 403–404 and n.6, 480 A.2d 552 (1984) (hearing on issue of fact commenced where appraiser appointed by court order and had filed his report); *Smith* v. *Reynolds*, 54 Conn. App. 381, 383–84, 735 A.2d 827 (1999) (no hearing on issue of fact where motion to appoint appraiser had been granted, but no appraiser had yet been appointed).

[7] Other cases involving a voluntary withdrawal in civil actions require little discussion. In *Baker* v. *Cordisco*, 37 Conn. App. 515, 519–21, 657 A.2d 230, cert. denied, 234 Conn. 907, 659 A.2d 1207 (1995), we upheld the withdrawal of a third party complaint where the pleadings were not closed in either the principal action or the related third party complaint on the date that jury selection commenced. Further, other cases involving a voluntary withdrawal have generally addressed the effect of the withdrawal or whether a motion to restore a case to the docket could be granted rather than whether the withdrawal itself was effective. See, e.g., *Waterbury Twin, LLC* v. *Renal Treatment Centers-Northeast, Inc.*, 292 Conn. 459, 467–69, 974 A.2d 626 (2009) (effect of withdrawal in summary process action on lease); *Travelers Property Casualty Co. of America* v. *Twine*, 120 Conn. App. 823, 826–28, 993 A.2d 470 (2010) (whether trial court improperly denied motion to restore action to docket where withdrawal occurred "before a hearing on the merits of the motion for motion for summary judgment" took place); *Daigneault* v. *Consolidated Controls Corp./Eaton Corp.*, 89 Conn. App. 712, 713–15, 875 A.2d 46 (motion to restore to docket after voluntary withdrawal pursuant to settlement agreement), cert. denied, 276 Conn. 913, 888 A.2d 83 (2005), cert. denied, 546 U.S. 1217, 126 S. Ct. 1434, 164 L. Ed. 2d 137 (2006).

[8] Consequently, the remaining factors discussed in *Mozell* can be properly understood as being pertinent to whether a withdrawal can be authorized as with prejudice, but not relevant to the determination of whether a hearing

on the merits has commenced. See *Mozell* v. *Commissioner of Correction*, supra, 147 Conn. App. 760.

[9] The operative language at issue in *Tevolini* v. *Tevolini*, supra, 66 Conn. App. 23, concerned the requirement under General Statutes § 46b-82 that the court "shall hear the witnesses, if any, of each party . . . ." (Emphasis omitted; internal quotation marks omitted.) That statute has since been revised to substitute language requiring the court to "consider the evidence presented by each party" instead of "to hear the witnesses, if any, of each party" and to provide that the basis shall be articulated if, "following a trial or hearing on the merits," it enters an order of alimony that "will terminate only upon the death of either party or the remarriage . . . ." See Public Acts 2013, No. 13-213, § 3.

[10] The statute presently authorizes that an offer of compromise may be made by the defendant "not later than thirty days before trial . . . ." General Statutes § 52-193.

[11] The language of § 52-470 (a) existed in materially the same format prior to the enactment of the current language of § 52-80. See General Statutes (1918 Rev.) § 6037; *Spears* v. *Kerars Realty Co.*, supra, 171 Conn. 703 (noting that present language of § 52-80 enacted in 1925).

[12] It is not precisely clear what habeas counsel and Judge Sferrazza discussed in chambers prior to the judge's taking the bench, but habeas counsel's statements on the record suggest that their discussion concerned the document prepared by the petitioner. See footnote 1 of this opinion.

[13] Further, we note that, in arriving at its conclusion concerning when the hearing on the merits began, the court relied on certain rules of practice—specifically, Practice Book §§ 14-18, 14-20, and 23-34. "When possible, we construe the rules of practice to avoid conflict with statutory provisions." *In re Joseph W.*, 301 Conn. 245, 260, 21 A.3d 723 (2011). "When a statute and a Practice Book rule are in conflict on a matter of substance, the provisions of the statute must prevail." *Lineberry* v. *Estevam*, 151 Conn. App. 264, 278, 95 A.3d 1132 (2014).

[14] The following colloquy occurred at trial:

"The Court: If you wanted to withdraw, you'd withdraw it, but it's going to be withdrawn with prejudice, which means that you will not be able to raise these claims again in the future. You'll have lost that opportunity. So, do you wish to go forward today, or do you wish to do something else? It's up to you.

"The Petitioner: Put me up against the wall. I mean, what can I do? I mean, I wanted—you know, without prejudice—

"The Court: Well, it's not going to be without prejudice. Do you want to go forward, then?"

[15] The following colloquy occurred at trial:

"[The Petitioner's Counsel]: And, Your Honor, for the record—[I] should have done a better job of stating the grounds to the objection to the court's entering a withdraw[al] with prejudice. In a civil trial, jeopardy does not attach until the first witness is sworn in. I believe that it was [the petitioner's] intention to withdraw this case before he was sworn in to testify.

"The Court: Okay. You've made that record, but everyone is prepared to go forward. This matter has been continued from a prior occasion. I cannot allow a party to use a withdrawal simply to manipulate the scheduling and the fact that he's not in agreement with your approach to the case, and that's the ruling of the court."

[16] Because the present appeal solely concerns the petitioner's statutory right to withdraw his petition prior to the commencement of a hearing on either the merits or an issue of fact, we take no position on whether and under what conditions a petitioner's purpose or actions in withdrawing a prior petition might prevent a claim for relief in a subsequent petition.