******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# DAVID GRANT *v.* COMMISSIONER
# OF CORRECTION
## (SC 20679)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Ecker, Alexander and Keller, Js.

*Syllabus*

Pursuant to *McCoy* v. *Louisiana* (138 S. Ct. 1500), a criminal defendant has
a right under the sixth amendment to the United States constitution to
autonomy in deciding the fundamental objectives of his defense, includ-
ing whether to continue to maintain his or her innocence, and that right
prohibits defense counsel from conceding a defendant's guilt as to a
charged offense over the defendant's intransigent and unambiguous
objection.

The petitioner, who had been convicted of manslaughter in the first degree
with a firearm, assault in the first degree, and criminal possession of a
firearm, sought a writ of habeas corpus, claiming, inter alia, that his
federal constitutional rights to autonomy and the effective assistance
of counsel were violated when his trial counsel, D, conceded at trial,
without informing the petitioner or obtaining his consent, that the peti-
tioner had acted recklessly and was guilty of manslaughter. The peti-
tioner had been charged with murder, among other offenses, in
connection with an incident in which he fired gunshots into a crowd
at a bar, killing one patron and wounding another. Following his arrest,
the petitioner confessed to the police that he was the shooter and
described his own conduct as reckless. At the petitioner's criminal trial,
the state's theory of the case was that the petitioner had gone to the
bar intending to shoot a rival drug dealer and, therefore, that the shooting
was premeditated. During closing argument, D argued, inter alia, that
the petitioner had fired the shots in self-defense because he was scared
that the rival drug dealer was going to shoot him, that the petitioner
did not have the requisite intent to commit murder but, rather, had
acted recklessly, and that he was guilty of manslaughter. The jury found
the petitioner not guilty of murder but guilty of the lesser included
offense of manslaughter in the first degree. At his habeas trial, the
petitioner testified that he neither discussed with D, nor consented to, D's
concession that the petitioner was guilty of manslaughter. In contrast,
D testified at the petitioner's habeas trial that it was necessary to argue
that the petitioner's conduct was reckless in order to effectively carry
out the trial strategy of arguing self-defense while also characterizing
the petitioner's conduct as manslaughter so as to avoid a murder convic-
tion, that he conferred with the petitioner numerous times regarding
this strategy, and that the petitioner agreed to it. The habeas court
rendered judgment denying the petition, concluding that *McCoy* was
inapplicable to the present case and that the petitioner failed to establish
that D had rendered ineffective assistance. On the granting of certifica-
tion, the petitioner appealed from the habeas court's judgment. *Held*:

1. The habeas court correctly determined that *McCoy* was inapplicable to
the present case, as the petitioner's right to autonomy was not implicated
under the facts of this case:

The United States Supreme Court made it clear in *McCoy* that the federal
constitutional right to autonomy is implicated only when counsel, over
a defendant's express objections, concedes the defendant's guilt as to
a charged offense, and, in the present case, there was no credible evi-
dence that the petitioner disagreed with D's trial strategy, expressly or
otherwise, or that he objected to D's concession of guilt.

Rather, the record indicated that the habeas court credited D's testimony
that D had conferred with the petitioner numerous times regarding trial
strategy and that, given his confession, the petitioner agreed that D
would have to concede that he had shot the victims either in self-defense
or without the requisite intent to commit murder.

2. This court declined to review the petitioner's unpreserved claim that D had rendered ineffective assistance of counsel by failing to adequately explain to the jury the relationship between recklessness and self-defense, the petitioner having failed to raise that claim before the habeas court:

The extent of the petitioner's ineffective assistance claim before the habeas court was that D conceded the petitioner's guilt as to manslaughter without consulting the petitioner, and the petitioner did not claim that there was any inadequacy in D's closing argument concerning the relationship between recklessness and self-defense in his habeas petition, during the habeas trial, or in his posttrial brief, and the habeas court did not address that claim.

Argued September 7—officially released December 27, 2022*

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland, and tried to the court, *Bhatt, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed. *Affirmed.*

*Lisa J. Steele*, assigned counsel, for the appellant (petitioner).

*Nathan J. Buchok*, deputy assistant state's attorney, with whom, on the brief, were *Paul J. Narducci*, state's attorney, *Stephen M. Carney*, supervisory senior assistant state's attorney, and *Mitchell S. Brody*, former senior assistant state's attorney, for the appellee (respondent).

*Opinion*

ALEXANDER, J. The petitioner, David Grant, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus,[1] in which he sought to vacate his conviction of manslaughter in the first degree with a firearm in violation of General Statutes §§ 53a-55 (a) (1) and 53a-55a (a), assault in the first degree in violation of General Statutes § 53a-59 (a) (5), and criminal possession of a firearm in violation of General Statutes § 53a-217. The petitioner claims that the habeas court incorrectly determined that (1) *McCoy* v. *Louisiana*,     U.S.    , 138 S. Ct. 1500, 200 L. Ed. 2d 821 (2018), which recognized a criminal defendant's right under the sixth amendment to the United States constitution to autonomy in deciding the fundamental objectives of his defense,[2] was not implicated under the facts of this case, and (2) his trial counsel, Sebastian DeSantis, did not render ineffective assistance of counsel under *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), when he conceded, during closing argument, that the petitioner was guilty of manslaughter. After a thorough review of the record and applicable law, we affirm the judgment of the habeas court.

The following facts and procedural history are relevant to our resolution of this appeal. In the early morning of June 24, 2012, the petitioner shot his gun into a crowd of patrons gathered on a deck at a bar in Norwich, killing Donna Richardson and wounding Crystal Roderick. In a video-recorded confession to the police, the petitioner stated that he had gone to the bar with Steven Velez, a local drug dealer, and that, shortly before closing time, Velez handed him a gun. Velez pointed out a bar patron named Isaiah Lee, who was standing on the outdoor deck adjacent to the bar. Although the petitioner did not know Lee personally, he believed that he was a dangerous person who "run[s] around . . . shooting at people . . . ." As a result, the petitioner became "nervous" and "scared" that Lee might shoot him. According to the petitioner, "[t]he deck was packed because the bar was full . . . . I saw [Lee] standing off to my left while I was walking to the back stairs. . . . [Lee] was moving around like he was getting ready to do something. He had his hands in his pocket. . . . I was scared, and I thought he might shoot at me. I didn't see . . . a gun [in his hand], but I didn't know what he was going to do. . . . As I walked past [Lee] with the gun in my right hand, I shot. I wasn't trying to kill him. I was shooting [just] to scare him because I was scared."

According to the petitioner's confession, as the petitioner made his way across the deck, he slipped and fell down some stairs and, in the process, his "hand went up," and he fired another shot. He then heard a loud noise and "thought maybe someone was shooting

back at [him], so, when [he] got up [and] . . . was walking away, [he] shot again back [toward] the bar . . . ." In his confession, the petitioner described his own conduct as "reckless" and stated that he would not have done what he did had he not been so "wasted." The petitioner further stated that, after the shooting, he and Velez fled to New York. On their way to New York, the petitioner disposed of the firearm and bullets, which the police subsequently recovered.

The state presented ample evidence corroborating the petitioner's confession that he was the shooter. The state's evidence included the presence of the petitioner's DNA on the recovered firearm and the forensic matching of the firearm to the bullets recovered from the victims' bodies. Additionally, Velez implicated the petitioner in the shooting, and several eyewitnesses identified the petitioner as the shooter.

The petitioner was arrested and charged with murder in violation of General Statutes § 53a-54a (a), assault in the first degree in violation of § 53a-59 (a) (5), and criminal possession of a firearm in violation of § 53a-217 (a). At the petitioner's criminal trial, DeSantis requested that the jury be instructed on self-defense, as well as on the lesser included offenses of manslaughter in the first degree with a firearm pursuant to §§ 53a-55 (a) (1) and 53a-55a (a) (intentional), manslaughter in the first degree with a firearm pursuant to §§ 53a-55 (a) (3) and 53a-55a (a) (extreme indifference), and manslaughter in the second degree with a firearm pursuant to General Statutes §§ 53a-56 (a) (1) and 53a-56a (a) (reckless). The trial court agreed to include each of these requested instructions in its jury charge.

During closing argument, DeSantis argued: "[There was no] evidence presented that [the petitioner] intended to kill anybody. . . . [The state] ha[s] to prove beyond a reasonable doubt that [the petitioner] intended to kill another person. . . . [I]t's a horrible tragedy [that Richardson died], and you can't get around it. But he did not have the intent; it is not a murder case. The same thing with . . . Roderick . . . . It wasn't his intent to do that, and I'll get more into the reason why, but he was reckless, he was intoxicated, and careless; he is not a murderer."

DeSantis continued: "[The petitioner] is told by . . . Velez that . . . [Lee] is out there; [the petitioner] testifies he gets scared. At some point . . . Velez gives [the petitioner] the gun . . . . The only way in and out of that bar is to go out that entrance on the porch. So, [the petitioner] is going out there, he's leaving, he wants to get out of there, and he sees . . . Lee standing there. He gets scared, he gets nervous, and he thinks [Lee] is maybe going to shoot him. He—you'll hear more of this, about what's allowable under self-defense—thinks that he's in immediate threat of harm. So, he takes out the gun [and] tries to fire a warning shot; he's intoxicated,

he's scared, there's a crowd of people, and he fires a shot. . . . [H]e's trying to get out of the situation. . . . It doesn't make sense that that would be something that he is doing on purpose. It's something that he's acting recklessly, and he doesn't have the intent to murder or he's intending to shoot the person; he's aiming the gun in a reckless manner and not [toward] anybody specific.

\* \* \*

"He just gets more afraid, so he's going to fire a warning shot. In looking back, it was stupid. At the time he was drunk, he was scared; it seemed like the best thing to do, so he fires a shot. He doesn't know where that shot went, but he was scared, and he was trying to get out of there. . . . He heard a shot when he was leaving, as he's trying to get out of there, and that's why he reaches back and fires a shot, and it was in self-defense and because he was scared. That, again, goes [toward] either he was defending himself or to manslaughter charges; again, not murder charges."

DeSantis closed by noting: "[The petitioner] gets on the video and cooperates with [the police] and admits he shot into the crowd; he did the shooting, he caused the death of . . . Richardson, but it's a manslaughter not a murder. And he certainly didn't intend to assault . . . Roderick, and the injury to [her] did not reach the level of assault in the first degree."

During the state's closing argument, the prosecutor disputed the petitioner's contention that he never intended to hurt anyone, arguing, instead, that the shooting was premeditated. The prosecutor maintained that the petitioner and Velez had gone to the bar intending to shoot Lee, a rival drug dealer. The prosecutor argued that the gun used in the shooting belonged to the petitioner, not Velez, as the petitioner claimed, and that the petitioner's actions following the shooting were consistent with a finding that he intended to kill Lee. The prosecutor further argued that the evidence belied the petitioner's claim that he acted in self-defense. The prosecutor noted that, when the petitioner first saw Lee and became scared, the petitioner was inside the bar and could have left through the front door, thereby avoiding contact with Lee,[3] but, instead, he chose to go out onto the deck, where Lee was standing.

The jury found the petitioner not guilty of murder but guilty of the lesser included offense of manslaughter in the first degree with a firearm and assault in the first degree. The trial court found the petitioner guilty of criminal possession of a firearm. Thereafter, the court sentenced the petitioner to a total effective sentence of forty-seven years of incarceration, followed by ten years of special parole.

On August 26, 2019, the petitioner filed an amended

petition for a writ of habeas corpus, alleging, inter alia, that his sixth amendment rights to autonomy under *McCoy* and the effective assistance of counsel under *Strickland* were violated when DeSantis "conceded in his closing argument, without informing the petitioner and/or obtaining the petitioner's consent, that the petitioner had acted recklessly and was guilty of manslaughter."

At his habeas trial, the petitioner testified that, prior to his criminal trial, DeSantis met with him on several occasions to discuss the strengths and weakness of his case and the best defense strategies to pursue. The petitioner stated that, although he favored claiming self-defense—based on the danger that he perceived Lee posed—he also wanted the jury instructed on manslaughter in the second degree. According to the petitioner, DeSantis informed him that, if they asked for an instruction on manslaughter in the second degree, the state would insist that the instruction for manslaughter in the first degree be given as well. When the petitioner was asked by habeas counsel whether there was "ever any consent on your part to concede that you were guilty of manslaughter as a part of [your] defense," he responded, "[n]o, we never discussed that." When asked whether "DeSantis ever discuss[ed] with you the idea that conceding guilt on manslaughter may be helpful in a jury finding you not guilty on murder," the petitioner responded, "[n]o, we never discussed none of that."

DeSantis recalled his conversations with the petitioner rather differently. He believed that the petitioner's best defense was to focus on the element of intent and to argue that the petitioner lacked the requisite intent to commit murder. Nevertheless, DeSantis agreed to present a dual trial strategy of arguing self-defense[4] while also characterizing the petitioner's conduct as manslaughter to avoid a conviction on the murder charge, which carried a much greater penalty. DeSantis believed that it was necessary to argue that the petitioner's conduct was reckless in order to effectively carry out either strategy. DeSantis testified that he conferred with the petitioner several times regarding this strategy and that the petitioner agreed to it.

In his posttrial habeas brief, the petitioner argued that "[DeSantis'] concession of the petitioner's guilt to the charge of manslaughter . . . without [his] prior approval . . . violated [his] rights to effective assistance of counsel [under *Strickland* and] personal autonomy [under *McCoy*] . . . ." The habeas court found no merit in either contention. In a thorough and comprehensive memorandum of decision, the court explained that, in *McCoy*, the United States Supreme Court recognized a sixth amendment right to autonomy allowing a criminal defendant "to make fundamental choices about his own defense, including whether to persist in

maintaining his innocence . . . ." (Internal quotation marks omitted.) The habeas court, quoting *McCoy* v. *Louisiana*, supra, 138 S. Ct. 1507, noted that *McCoy* made clear that the right to autonomy is violated only when defense counsel "concede[s] guilt over the defendant's intransigent and unambiguous objection." (Internal quotation marks omitted.)

Applying *McCoy* to the petitioner's claim, the habeas court concluded: "[I]t was virtually unchallengeable that [the petitioner] fired the shots that caused the death of Richardson and [injured] Roderick. Thus, the only viable defense strategies were self-defense—I did it, but I was justified in doing so—or manslaughter—I did not intend to kill. Both . . . defenses, even the one favored by the [petitioner], require[d] an admission that [the petitioner] was the individual who fired the shots. Defense counsel undoubtedly has a duty to discuss potential strategies with [a] defendant . . . [*and*] *DeSantis did so*. In discussing the defense strategies and [the petitioner's] desire to pursue self-defense, DeSantis necessarily discussed the mechanism by which those defenses would be presented to the jury. This is supported by [the petitioner's] own testimony that he wanted the jury instructed on manslaughter in the second degree. There is no evidence before this court that [the petitioner] objected to DeSantis' strategy of conceding that [the petitioner] fired the shots in question, but either acted in self-defense when doing so or did not possess the requisite mental state for murder, when both strategies were discussed with [the petitioner] before the trial." (Citation omitted; emphasis added; internal quotation marks omitted.) Because the right to autonomy is implicated only when a defendant expressly objects to counsel's concession of guilt, the habeas court concluded that *McCoy* was inapplicable under the facts of this case.[5]

The habeas court also rejected the petitioner's claim that DeSantis rendered ineffective assistance of counsel by conceding the petitioner's guilt as to manslaughter. The court found that the concession was a legitimate trial strategy "necessitated by the overwhelming evidence proving almost indisputably that [the petitioner] was present at the scene and wantonly fired shots into a crowd." The court further reasoned that the strategy was undeniably effective because the petitioner was acquitted of the murder charge. Lastly, the court noted that, even if DeSantis' performance fell below an objective standard of reasonableness, there was no possibility that the petitioner was prejudiced by it given the overwhelming strength of the state's case.

I

We begin with the petitioner's claim that the habeas court incorrectly determined that *McCoy* was inapplicable. The standard of review applicable to this claim is well established. Although a challenge to the facts found

by the habeas court is reviewed under the clearly erroneous standard; see, e.g., *Duperry* v. *Solnit*, 261 Conn. 309, 335, 803 A.2d 287 (2002); whether those facts constituted a violation of the petitioner's rights under the sixth amendment is a mixed question of law and fact subject to this court's plenary review. See *Taylor* v. *Commissioner of Correction*, 324 Conn. 631, 637, 153 A.3d 1264 (2017).

On appeal, the petitioner does not contest the habeas court's finding that he never objected to DeSantis' concession. Rather he claims that his right to autonomy was violated by DeSantis' failure to "adequately inform" him of the "ramifications" the concession would have with respect to arguing his self-defense claim. The petitioner contends that he never would have agreed to the concession had he fully understood those ramifications.[6] The respondent, the Commissioner of Correction, counters that the habeas court correctly determined that *McCoy* was inapplicable to the facts of this case. We agree with the respondent.

In *McCoy*, the United States Supreme Court recognized a criminal defendant's sixth amendment right to autonomy in deciding the objectives of his defense and concluded that the right prohibits defense counsel from "admit[ting] [a] client's guilt of a charged crime over the client's intransigent objection to that admission." *McCoy* v. *Louisiana*, supra 138 S. Ct. 1510. "When a client expressly asserts that the objective of his defense is to maintain innocence of the charged criminal acts, his lawyer must abide by that objective and may not override it by conceding guilt." (Emphasis omitted; internal quotation marks omitted.) Id., 1509.

The facts in *McCoy* were not in dispute. The petitioner, Robert Leroy McCoy, was charged with three counts of first degree murder. Id., 1506. Throughout the proceedings, McCoy maintained his innocence, insisting that he was out of state at the time of the killings. Id. McCoy's defense counsel, Larry English, "concluded that the evidence against McCoy was overwhelming and that, [in the absence of] a concession at the guilt stage that McCoy was the killer, a death sentence would be impossible to avoid at the penalty phase." Id.

McCoy was " 'furious' " when English told him that he intended to concede McCoy's guilt to the murders. Id. Two days before trial was set to begin, McCoy sought to terminate English's representation, and English similarly requested that the court remove him as McCoy's counsel, given their disagreement over trial strategy. Id. The trial court denied both requests; id.; and, subsequently, English argued to the jury that "there was no way reasonably possible that [it] could hear the prosecution's evidence and reach any other conclusion than . . . McCoy was the cause of these individuals' death[s]"; (internal quotation marks omitted) id.; and

that "the evidence is unambiguous, [McCoy] committed three murders." (Internal quotation marks omitted.) Id., 1507. Thereafter, McCoy took the witness stand to assert his innocence and to "[press] an alibi difficult to fathom." Id. The jury found McCoy guilty on all three murder counts, and, following the penalty phase hearing, the trial court sentenced him to death in accordance with the jury's verdicts. Id. The Louisiana Supreme Court subsequently upheld the trial court's ruling that English had authority to concede McCoy's guilt, despite McCoy's opposition to any admission of guilt, concluding that "[t]he concession was permissible . . . because [English] reasonably believed that admitting guilt afforded McCoy the best chance to avoid the death [penalty]." Id.

The United States Supreme Court reversed the Louisiana Supreme Court's judgment, holding that "a defendant has the right to insist that counsel refrain from admitting guilt, even when counsel's [experienced based] view is that confessing guilt offers the defendant the best chance to avoid the death penalty." Id., 1505. The court explained that, although the role of counsel necessarily entails making certain "[t]rial management" and "strategic" decisions concerning "what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence," other decisions are reserved for the client alone, such as "whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal. . . .

"Autonomy to decide that the objective of the defense is to assert innocence belongs in this latter category. . . . These are not strategic choices about how best to *achieve* a client's objectives; they are choices about what the client's objectives in fact *are*." (Citation omitted; emphasis in original; internal quotation marks omitted.) Id., 1508.

In reaching its decision, the court distinguished *Florida* v. *Nixon*, 543 U.S. 175, 125 S. Ct. 551, 160 L. Ed. 2d 565 (2004), a case involving a *Strickland* claim in which the "[c]ourt considered whether the [c]onstitution bars defense counsel from conceding a . . . defendant's guilt at trial when [the] defendant, informed by counsel, neither consents nor objects . . . ." (Citation omitted; internal quotation marks omitted.) *McCoy* v. *Louisiana*, supra 138 S. Ct. 1505, quoting *Florida* v. *Nixon*, supra, 178. In *Nixon*, the court concluded that, "[w]hen counsel informs [a] defendant of the strategy counsel believes to be in the defendant's best interest and the defendant is unresponsive, counsel's strategic choice is not impeded by any blanket rule demanding the defendant's explicit consent." *Florida* v. *Nixon*, supra, 192.

The court explained that the distinguishing factor between *McCoy* and *Nixon* was that, unlike the defen-

dant in *Nixon,* who "never verbally approved or pro-tested counsel's proposed approach"; (internal quotation marks omitted) *McCoy* v. *Louisiana,* supra, 138 S. Ct. 1509; McCoy "vociferously insisted that he did not engage in the charged acts and adamantly objected to any admission of guilt." Id., 1505. In such circumstances, the court determined, English was constitutionally obli-gated to honor McCoy's wish to pursue a defense of actual innocence, no matter how ill-advised or weak that defense may have been. Id., 1509; see id., 1508 ("[j]ust as a defendant may steadfastly refuse to plead guilty in the face of overwhelming evidence against her, or reject the assistance of legal counsel despite the defendant's own inexperience and lack of professional qualifications, so may she insist on maintaining her innocence at the guilt phase of a . . . trial").

We agree with the habeas court that the petitioner's right to autonomy was not implicated under the facts of this case. As that court stated, there is simply no evidence—at least none that the habeas court cred-ited—that the petitioner ever disagreed with DeSantis' trial strategy, much less that he did so expressly, as *McCoy* requires.[7] To the contrary, it is evident from the habeas court's memorandum of decision and our review of the record that the habeas court credited DeSantis' testimony that he and the petitioner had "numerous conversations" about trial strategy and agreed that, given the petitioner's confession, DeSantis would have to concede that the petitioner shot the victims but would argue that he did so in self-defense or, alterna-tively, that he lacked the requisite intent to commit murder. With respect to the latter defense, DeSantis testified that he and the petitioner discussed that this would require DeSantis to argue that the petitioner acted "in a reckless manner" but "didn't intend to kill somebody," and the petitioner agreed to this approach.

The United States Supreme Court made clear in *McCoy* that the sixth amendment right to autonomy is impli-cated only when, over a defendant's express objections, counsel concedes the defendant's guilt to a charged offense. This limitation on the right to autonomy is evident throughout the court's decision but especially in the court's restatement of the issue presented: "whether it is unconstitutional to allow defense counsel to concede guilt *over the defendant's intransigent and unambiguous objection.*" (Emphasis added.) *McCoy* v. *Louisiana,* supra, 138 S. Ct. 1507. Because no such objection was made in this case—indeed, the petitioner does not contend otherwise[8]—the habeas court cor-rectly determined that the petitioner's right to auton-omy was not implicated under the facts of this case.[9]

## II

The petitioner next claims that DeSantis rendered ineffective assistance of counsel by failing to adequately explain to the jury "how recklessness relates to self-

defense." The petitioner argues that, if DeSantis had explained to the jury how the petitioner "could act recklessly, but also in lawful self-defense," there is a reasonable probability that the state "would have been unable to disprove that defense beyond a reasonable doubt."

The respondent argues that this court should decline to reach the petitioner's ineffective assistance claim because it is unpreserved. The respondent contends that the petitioner's sole argument before the habeas court was that DeSantis' representation was ineffective insofar as he failed to consult with him about the concession he planned to make at trial, whereas now he claims that DeSantis' representation was ineffective insofar as he failed to adequately explain to the jury "how recklessness relates to self-defense."

The petitioner counters that the issue of DeSantis' deficient advocacy with respect to his self-defense claim is preserved because "[i]mplicit in [the petitioner's] argument [before the habeas court] is that [DeSantis'] focus on a manslaughter verdict and decision not to press [the petitioner's] assertion of his legal innocence—that [the petitioner] acted in lawful self-defense—violated [his sixth amendment rights]." We disagree.

We have repeatedly stated that "[a] party cannot present a case to the trial court on one theory and then seek appellate relief on a different one . . . . For this court to . . . consider [a] claim on the basis of a specific legal ground not raised during trial would amount to trial by ambuscade, unfair both to the [court] and to the opposing party." (Internal quotation marks omitted.) *Council* v. *Commissioner of Correction*, 286 Conn. 477, 498, 944 A.2d 340 (2008). Moreover, " 'we will not review a claim unless it was distinctly raised at trial.' *Crawford* v. *Commissioner of Correction*, 294 Conn. 165, 203, 982 A.2d 620 (2009); [see] id., 202–204 (declining to review petitioner's claim that habeas court improperly failed to apply due process analysis to his claim of right to appeal); see also Practice Book § 60-5 ('[t]he court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial')." *Eubanks* v. *Commissioner of Correction*, 329 Conn. 584, 597, 188 A.3d 702 (2018). "[O]nly in [the] most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court." (Internal quotation marks omitted.) *Diaz* v. *Commissioner of Correction*, 335 Conn. 53, 58, 225 A.3d 953 (2020). We can think of no reason, and the petitioner has provided none, why this court should deviate from these well established principles in the present case.

Before the habeas court, the petitioner argued that DeSantis' representation was ineffective insofar as he conceded the petitioner's guilt as to manslaughter without consulting the petitioner. This was the extent of

the petitioner's ineffective assistance claim before that court. Nowhere did he argue—not in his petition, not at trial, and not in his posttrial brief—any inadequacy in DeSantis' closing argument concerning the relationship between recklessness and self-defense. Nor did the habeas court address any such claim. Accordingly, we agree with the respondent that the petitioner's claim on appeal is unpreserved and decline to review it.

The judgment is affirmed.

In this opinion the other justices concurred.

* December 27, 2022, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The habeas court granted the petitioner's petition for certification to appeal pursuant to General Statutes § 52-470 (g). The petitioner subsequently appealed from the judgment of the habeas court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] Although the petitioner's criminal trial concluded three years before *McCoy* was decided, the petitioner argues that the right to autonomy recognized therein was a new watershed rule of criminal procedure under *Teague* v. *Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989), and, therefore, it must be given retroactive effect. Because we conclude that *McCoy* is inapplicable to this case, we leave the question of its retroactivity for another day.

[3] General Statutes § 53a-19 (b) provides in relevant part that "a person is not justified in using deadly physical force upon another person if he or she knows that he or she can avoid the necessity of using such force with complete safety . . . by retreating . . . ."

We note that, although § 53a-19 has been amended by the legislature since the events underlying the present case; see Public Acts 2019, No. 19-108, § 3; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

Evidence adduced at the petitioner's criminal trial established that there were "numerous exits [at the bar], which had been an old schoolhouse," such that patrons "could get out in multiple, different ways."

[4] "[When] the evidence warrants, the trial court must instruct the jury on self-defense in cases involving the charge of manslaughter in the second degree." *State* v. *Hall*, 213 Conn. 579, 585, 569 A.2d 534 (1990).

[5] Relying on case law from the United States Court of Appeals for the Second Circuit, the habeas court also concluded that *McCoy* was inapplicable for the additional reason that DeSantis had not actually conceded guilt on the charged offense (murder) but only as to an element of that offense—identity, which he did by admitting that the petitioner was the shooter. See *United States* v. *Rosemond*, 958 F.3d 111, 122 (2d Cir. 2020) (concluding that "the right to autonomy is not implicated when defense counsel concedes one element of the charged crime while maintaining that the defendant is not guilty as charged"), cert. denied,    U.S.    , 141 S. Ct. 1057, 208 L. Ed. 2d 524 (2021). The habeas court reasoned that, even if DeSantis' statements could be construed as conceding guilt, it was a concession of guilt to a lesser included offense and, therefore, should be assessed within the ineffective assistance of counsel framework of *Strickland*, not under *McCoy*. Specifically, the habeas court observed that, "[w]hile some ambiguity can be read into *McCoy* as to whether it applies to lesser included offenses, other courts have consistently held that counsel's concession of guilt [as to] a lesser included offense is to be viewed through the lens of an ineffective assistance of counsel claim." (Footnote omitted.) Because we conclude that *McCoy* is inapplicable for other reasons, we need not decide whether it is inapplicable for the additional reason cited by the habeas court.

[6] The petitioner advances several additional arguments in support of his autonomy claim that we need not reach because we agree with the habeas court's finding that the petitioner failed to establish the threshold showing for advancing a claim under *McCoy*.

[7] We note that the habeas court assumed, without deciding, that the principles enunciated in *McCoy* and *Nixon*—both death penalty cases—were applicable outside the capital offense context. Such an assumption was warranted. It is axiomatic that the sixth amendment applies to *all* criminal prosecutions and that the rights secured thereunder do not turn on the

severity of the potential punishment for an offense. See U.S. Const., amend. VI ("[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense").

[8] In his posttrial brief in the habeas court, the petitioner conceded that his case was distinguishable from *McCoy* because, unlike the petitioner in *McCoy*, he did not object to DeSantis' concession. The petitioner argued, however, that the record "reasonably support[ed]" a finding "that DeSantis failed to inquire with the petitioner prior to [conceding his guilt] . . . ." The petitioner then argued that "[i]t is tautological that, if counsel is not free to concede to a client's guilt for strategic purposes over a client's objection, counsel should similarly not be free to do so without inquiring with the client at all." Since *McCoy*, courts that have considered similar claims have held that they should be analyzed within the *Strickland* ineffective assistance of counsel framework. See, e.g., *Harvey* v. *State*, 318 So. 3d 1238, 1239–40 (Fla. 2021) (in absence of express objection to counsel's concession, claim that counsel conceded guilt without consulting defendant implicates right to effective assistance of counsel under *Nixon* and *Strickland*, not right to autonomy under *McCoy*), cert. denied,    U.S.    , 142 S. Ct. 1110, 212 L. Ed. 2d 8 (2022); *Harper* v. *State*, Docket No. 20-1537, 2022 WL 1100280, *4–7 (Iowa App. April 13, 2022) (decision without published opinion, 978 N.W.2d 99) (same); see also *Palmer* v. *Garrett*, Docket No. 3:18-cv-00245-HDM-CLB, 2022 WL 3684713, *7 (D. Nev. August 25, 2022) (concluding that *McCoy* was inapplicable to claim that counsel did not adequately advise petitioner of ramifications of concession strategy because "*McCoy* addressed a [defendant's] autonomy, not counsel's competence . . . and any claims challenging trial counsel's advice could have been raised in [the petitioner's] first . . . [habeas] petition based on *Nixon*" (citation omitted; internal quotation marks omitted)). See generally *In re Somerville*, Docket No. 53586-6-II, 2020 WL 6281524, *4 (Wn. App. October 27, 2020) (decision without published opinion, 14 Wn. App. 2d 1068) ("*McCoy* points to *Nixon* for the proposition that counsel has a duty to develop a trial strategy and [to] discuss it with his or her client, but *McCoy* . . . does not hold that there is an inherent violation of a defendant's autonomy to decide a defense objective if that first duty is violated").

[9] In addition to his claim under *McCoy*, the petitioner asks us to exercise our supervisory authority over the administration of justice to adopt a retroactive, prophylactic rule requiring criminal defense attorneys to obtain a defendant's written consent to concede guilt as to an offense as part of their trial strategy. We decline the petitioner's request. We are not persuaded that traditional protections are insufficient for ensuring that criminal defense attorneys adequately apprise defendants of their intent to concede at trial guilt as to an offense. See, e.g., *In re Daniel N.*, 323 Conn. 640, 647–48, 150 A.3d 657 (2016) ("[o]nly in the rare circumstance [in which] . . . traditional protections are inadequate to ensure the fair and just administration of the courts will we exercise our supervisory authority to reverse a judgment" (internal quotation marks omitted)). The sixth amendment guarantee of the effective assistance of counsel; see, e.g., *Florida* v. *Nixon*, supra, 543 U.S. 178 (recognizing defense counsel's "[constitutional] duty to discuss potential strategies with the defendant"); *Strickland* v. *Washington*, supra, 466 U.S. 688 (recognizing defense counsel's "overarching duty [under the sixth amendment] to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution"); and the Rules of Professional Conduct; see e.g., Rules of Professional Conduct 1.2 ("a lawyer shall abide by a client's decisions concerning the objectives of representation and . . . shall consult with the client as to the means by which they are to be pursued"); Rules of Professional Conduct 1.4 ("[a] lawyer shall . . . keep the client reasonably informed about the status of a matter . . . promptly comply with reasonable requests for information . . . [and] explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation"); demand no less of competent counsel.

Although we choose not to exercise our supervisory authority, we nonetheless strongly encourage criminal defense attorneys to memorialize critical conversations with clients concerning trial strategy and to retain those records. Doing so benefits not only the client but the attorney as well should a claim later be made that the attorney failed to adequately apprise the client of the risks and rewards attendant to any such strategy.