## LUCAS BETANCOURT *v.* COMMISSIONER
## OF CORRECTION
## (AC 32696)

Gruendel, Alvord and Bear, Js.

Submitted on briefs November 18, 2011—officially released January 3, 2012

*Joseph Visone*, special public defender, filed a brief
for the appellant (petitioner).

*Maureen Platt*, state's attorney, *Harry Weller*, senior assistant state's attorney, and *Eva Lenczewski*, supervisory assistant state's attorney, filed a brief for the appellee (respondent).

*Opinion*

PER CURIAM. The petitioner, Lucas Betancourt, appeals from the judgment of the habeas court dismissing the third count of his revised second amended petition for a writ of habeas corpus. His sole claim is that the court improperly dismissed that count without an evidentiary hearing. We affirm the judgment of the habeas court.

The facts underlying this habeas appeal are set forth in *State* v. *Betancourt*, 106 Conn. App. 627, 942 A.2d 557, cert. denied, 287 Conn. 910, 950 A.2d 1285 (2008). "On January 29, 2005, the [petitioner] drove his two nephews, Ricco Torres and Felipe Buitrago, his friend, Michael Meteiver, and his own six year old daughter to a McDonald's restaurant in Waterbury in a green Ford Escort. While at McDonald's, the [petitioner] and Meteiver had a discussion about stealing guns from the home of Meteiver's father-in-law, Mario Fusco, the victim. Meteiver was aware that the victim's son had a gun collection and that it had been kept at the victim's home. The [petitioner] then drove his nephews, Meteiver and his daughter to the victim's home.

"After arriving at the victim's home, the [petitioner] ordered everyone except his daughter out of the car. The [petitioner] directed Buitrago to watch from the front door and to enter the house last. The men then knocked on the victim's door, and when the victim answered, the men pushed themselves into the house, knocking the victim to the floor and breaking his glasses. After entering, the [petitioner] and Torres bound the victim's hands and feet with duct tape and covered his head with a pillowcase. The [petitioner]

then asked the victim where he kept his guns and searched through the house looking for them even though the victim explained that he no longer kept his son's guns in his house. While searching, they stole $150 as well as the victim's bank card and a handgun. The [petitioner] and Meteiver demanded of the victim the personal identification number for his bank card. After receiving it, the two men went to a Webster Bank automatic teller machine and tried unsuccessfully to withdraw funds from the victim's account. They then returned to the victim's home. After arriving, the [petitioner], Meteiver, Buitrago and Torres returned to the car where the [petitioner's] daughter was waiting, and the [petitioner] drove to his apartment in Naugatuck where he left his nephews and his daughter. The [petitioner] then left the apartment with Meteiver. When he returned, he gave Buitrago the gun that either he or Meteiver had stolen from the victim's home and told Buitrago to put the gun in a drawer under the bed of the [petitioner's] daughter. The [petitioner] left the apartment again.

"In the meantime, the victim had called the police. An interview with the victim led the police to believe that Meteiver might be involved in the break-in because he was the only person who knew the victim had kept his son's gun collection in his home. The police found Meteiver and arrested him on an unrelated charge. During a search of Meteiver's person, the police found the keys to the victim's car and house. Meteiver admitted that he had taken part in the break-in at the victim's house and directed the police to the [petitioner's] apartment to find the other individuals involved. The police arrived at the [petitioner's] apartment with a search warrant, where they found and arrested Buitrago and Torres. Buitrago told the police that the gun they were looking for was in a drawer under the bed of the [petitioner's] daughter. The police found the gun, which was

the gun taken from the victim's home, as well as some money and mail addressed to the [petitioner]. A little while later, the [petitioner] arrived at his apartment and was arrested.

"The following day, the police found a green Ford Escort in the driveway next to the [petitioner's] apartment. The police obtained a search warrant for the car and found a roll of duct tape inside. An analysis of the duct tape revealed that the torn end of the duct tape roll matched the torn end found on the victim's socks." Id., 629–31. A jury trial followed, at the conclusion of which the petitioner was found guilty of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (B), conspiracy to commit kidnapping in the first degree in violation of General Statutes §§ 53a-48 and 53a-92 (a) (2) (B), burglary in the first degree in violation of General Statutes § 53a-101 (a) (2), conspiracy to commit burglary in the first degree in violation of §§ 53a-48 and 53a-101 (a) (2), robbery in the second degree in violation of General Statutes § 53a-135 (a) (1), and conspiracy to commit robbery in the second degree in violation of §§ 53a-48 and 53a-135 (a) (1). Id., 629.

In his direct appeal of that judgment of conviction, the petitioner alleged evidential insufficiency and prosecutorial impropriety. With respect to the latter claim, the petitioner argued "that the prosecutor improperly appealed to the emotions of the jury by arguing facts that were not in evidence regarding the [petitioner's] relationship with his daughter. In addition, the [petitioner] argue[d] that the prosecutor improperly bolstered Buitrago's credibility when she argued facts that were not in evidence regarding Buitrago's concern for the [petitioner's] daughter and for the victim." Id., 639. This court rejected the petitioner's claims, concluding that "[d]uring trial, the state presented evidence that the [petitioner] took his six year old daughter with him

and left her alone in the car when he committed the crimes. There was further testimony that the handgun that was taken from the victim's home was found in a drawer under the bed of the [petitioner's] daughter. Because the prosecutor may properly ask the jury to draw reasonable inferences from the facts presented . . . it was not improper for the prosecutor to ask the jury to draw a reasonable inference that the [petitioner's] actions demonstrated a lack of concern for his daughter's welfare. Similarly, there was evidence that when the police knocked on the door of the [petitioner's] apartment, Buitrago ran to where his cousin was sleeping because he thought she might be frightened. Furthermore, there was evidence that the victim told Buitrago that he had a broken hip and, in response, Buitrago placed a pillow under the victim's hip, while he lay on the floor. Again, the prosecutor properly asked the jury to draw reasonable inferences from the facts that Buitrago demonstrated concern for his cousin and concern for the victim. Because the prosecutor was arguing facts that were in evidence and was calling on the jury to draw reasonable inferences from those facts, there was no prosecutorial impropriety." (Citation omitted.) Id., 640.

The petitioner thereafter filed a petition for a writ of habeas corpus. His revised second amended petition contained five counts. The first four counts alleged ineffective assistance of trial counsel; the fifth count alleged that, pursuant to General Statutes § 52-270 (a), he was entitled to a new trial on the ground of newly discovered evidence. Prior to the habeas trial, the respondent, the commissioner of correction, filed a motion to dismiss counts three, four and five of the petition, which the court granted after argument thereon. After a trial on the remaining counts, the court denied the petition for a writ of habeas corpus. The court granted the subsequent

petition for certification to appeal from that judgment, and this appeal followed.

On appeal, the petitioner contends that the court improperly dismissed the third count of his petition without conducting an evidentiary hearing. We disagree.

In the third count of his petition, the petitioner claims that his trial counsel was ineffective for not filing a motion in limine to keep the jury from hearing evidence regarding his daughter's presence when the crimes were planned and perpetrated. That count concludes that if "the completely irrelevant testimony of the whereabouts of the petitioner's minor child [had been precluded] the jury's verdict would have been different." Because the petitioner cannot establish the requisite prejudice resulting from that alleged deficiency, the court properly dismissed that count.

The petitioner alleges that the jury was prejudiced by references during closing argument to evidence that his daughter was present at the time he planned the crimes, that she remained in the vehicle while the crimes were perpetrated and that he and his conspirators hid a handgun under her bed. His contention necessarily fails because this court already has rejected the petitioner's claim that those references improperly inflamed the passions of the jury. See *State* v. *Betancourt*, supra, 106 Conn. App. 639–40. Furthermore, during argument on the respondent's motion to dismiss, the court specifically asked the petitioner if he had any evidence to support his claim of prejudice regarding the third count of his petition. The petitioner conceded that he did not, stating: "I can't argue prejudice. . . . [W]e have no evidence, we have no testimony."

As a general matter, "absent an explicit exception, an evidentiary hearing is always required before a habeas petition may be dismissed." *Mercer* v. *Commissioner*

*of Correction*, 230 Conn. 88, 93, 644 A.2d 340 (1994). One such exception is contained in Practice Book § 23-29 (5), which provides that the court may at any time dismiss a habeas petition if it determines that, among other reasons, "any . . . legally sufficient ground for dismissal of the petition exists." See also *Fuller* v. *Commissioner of Correction*, 75 Conn. App. 814, 818, 817 A.2d 1274, cert. denied, 263 Conn. 926, 823 A.2d 1217 (2003). "A habeas corpus action, as a variant of civil actions, is subject to the ordinary rules of civil procedure, unless superseded by the more specific rules pertaining to habeas actions." *Taylor* v. *Commissioner of Correction*, 125 Conn. App. 624, 630, 11 A.3d 160 (2010) (*Beach, J.*, concurring and dissenting), cert. denied, 300 Conn. 908, 12 A.3d 1005 (2011). Because the third count of the petition alleged ineffective assistance of counsel, the petitioner's claim required him to demonstrate prejudice resulting from his counsel's failure to file the motion in limine. See *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In light of the petitioner's concession before the habeas court that he could neither argue such prejudice nor offer any evidence thereon, the court properly granted the respondent's motion to dismiss the third count of the petition pursuant to Practice Book § 23-29 (5).

The judgment is affirmed.